## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BUDNICK CONVERTING, INC.,**

     **Plaintiff/Counter-defendant,**

**v.**

**NEBULA GLASS INTERNATIONAL, INC.,**
**d/b/a GLASSLAM,**

     **Defendant/Counter-plaintiff,**

_____

**NEBULA GLASS INTERNATIONAL, INC.,**
**d/b/a GLASSLAM,**

     **Third Party Plaintiff,**

**v.**

**TESA TAPE, INC.,**

     **Third Party Defendant.**          **Case No. 09-cv-646-DRH**

## ORDER

**HERNDON, Chief Judge:**

On March 30, 2012, this Court entered an order (Doc. 114) granting summary judgment in favor of Budnick Coverting, Inc. ("Budnick") and against Nebula Glass International, Inc. d/b/a Glasslam ("Glasslam"). The Court found, however, that issues still remained as to the amount of damages to which Budnick is entitled. Accordingly, the Court ordered the parties to file supplemental briefs regarding the

issues of damages. The parties have filed their briefs, raising four issues concerning the following: 1) Whether Glasslam is entitled to reduce damages as a result of Budnick's alleged failure to mitigate; 2) Whether Budnick is entitled to recover finance charges under the terms and conditions; 3) Whether Budnick is entitled to recover attorneys fees under the terms and conditions; and 4) whether Glasslam is an entitled to a reduction for alleged under performance. For the reasons stated below, the Court orders that judgment be entered in favor of Budnick and against Glasslam in the amount of $2,473,353.00.

## I. Background

Budnick is claiming $2,473,353.00 in damages, consisting of the following:

- $260,634.26 - material converted, delivered, and invoiced to Glasslam;
- $1,210,377.11 - material in inventory ordered by Glasslam but refused;
- $3,580.00 - expedited charges;
- $898,568.84 - finance charges; and
- $100,192.94 - attorneys fees.
- $2,473,353.15 - Total.

The Court has already determined, and Glasslam did not dispute, that Budnick's terms and conditions apply to the case at hand. Those terms and conditions, which will be set forth more specifically where applicable below, contained nine provisions governing: 1) "Prices"; 2) "Shipments"; 3) "Payments"; 4) "Cancellations, Returns, and Assignments"; 5) "Limited Warranty, Inspection and Claims"; 6) "Limits on Liability"; 7) "Force Majeure and Shortages"; 8) "Other

Provisions"; and 9) "Exclusive Terms and Conditions."  (Doc. 97-17, p. 2).

## II.  Standard of Review

In a diversity case, the Court applies state law to substantive issues. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008).  Federal law governs procedure.  *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010).  When neither party raises a conflict of law issue in a diversity case the applicable law is that of the state in which the federal court sits.  *Id*.  In this case, that state is Illinois.  Under Illinois choice of law rules, however, litigants can stipulate to which substantive law applies to their case so long as the stipulation is reasonable.  *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 n. 6 (7th Cir. 1995).  Here, the Court notes that Budnick's terms and conditions state that Illinois law applies.  Finding this to be reasonable, the Court will apply Illinois law in this case.  To the extent that the Illinois Supreme Court has not yet spoken to any of the issues before the Court, the Court shall apply the law as it would predict the Illinois Supreme Court would if deciding the case.  *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001).

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. PROC. 56(c).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant.  *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir.

1994).   The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.  Analysis

As mentioned above, and in the Court's prior order granting Budnick summary judgment, Glasslam did not dispute that Budnick's terms and conditions apply to the case at hand; nor did Glasslam dispute that the Illinois UCC applies. "'When commercial parties of equal bargaining power allocate the risk of loss by contract, . . . there is a strong public policy to give effect to the private allocation. Under the U.C.C., commercial parties can allocate the risk of loss from defects through warranties, disclaimers and limitations on warranties.'"  *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 838 (Ill. 1988) (quoting *Henry Heide, Inc. v. WRH Prods. Co.*, 766 F.3d 105, 109 (3rd Cir. 1985)).

*A.  Failure to Mitigate*

First, Glasslam argues that it is not responsible to reimburse Budnick for the damages it incurred as a result of Budnick's failure to mitigate damages by selling the goods which have sat in the warehouse of Budnick and Tesa without documented

attempts to sell these goods on the open market. Glasslam contends that it is entitled to recover its damages under either §§ 810 ILCS 5/2-708 or 2-709 because there is no other market for the tape, a custom product made for Glasslam's unique requirements. Second, Budnick argues that uncontradicted testimony exists that establishes that attempts were made to sell the tape after Glasslam rejected it, but these attempts were unsuccessful. Third, Budnick contends that Glasslam waived any claim that Budnick failed to mitigate damages by failing to raise this as an affirmative defense. Fourth, Budnick alternatively attests that "in the alternative to the above, Section 2-709 permits recovery of the contract price 'if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.' 810 ILCS 5/2-709."

> Section 810 ILCS 5/2-709 provides as follows:
>
> When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next Section, the price
> (a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of loss has passed to the buyer; and
> (b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

810 ILCS 5/2-709. A seller who is not entitled to damages under § 810 ILCS 5/2-709, "shall nevertheless be awarded damages for non-acceptance under [§ 810 ILCS 5/2-708]." Section 810 ILCS 5/2-708 provides that "the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together within

any incidental damages provided in this Article, but less expenses saved in consequences of the buyer's breach." § 810 ILCS 5/2-708.

Here, the Court finds that Budnick is able to recover damages under § 810 ILCS 5/ 2-709 because there is no other market for the tape, a custom product made for Glasslam's unique requirements, and because the record establishes that Budnick made a reasonable effort to resell the tape at a reasonable price or the circumstances reasonably indicate that such effort would be unavailing due to the fact that the tape was a unique product made specifically for Glasslam's use. See § 810 ILCS 5/2-709. Thus, Glasslam has not established that Budnick has failed to mitigate its damages and Budnick is entitled to recover the price of the goods identified in the contract.

Furthermore, "failure to mitigate damages is an affirmative defense under Illinois law." *Partners, Am. Eagle Historic Props., Inc. v. Lee*, 921 F.2d 122, 125 (7th Cir. 1990) (citing, e.g., *Toushin v. Gonsky*, 77 Ill. App. 3d 508 (1979)). Failure to timely assert an affirmative defense may result in a finding by the Court that defendant waived the defense. *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997). "'The failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 570 (7th Cir. 2011) (quoting *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003)). Here, Budnick would clearly be harmed if Glasslam were to be able to raise this affirmative defense after summary judgment had already been entered in favor of Budnick. See *Venters*, 123 F.3d at 968

(reversing summary judgment in favor of defendants on the statute of limitations defense and remanding for trial after concluding that the defendants waived their statute of limitations defense when defendants did not mention that defense until they filed their reply in support of its motion for summary judgment, submitted a year after the case was filed).  Thus, the Court finds that Glasslam has waived the affirmative defense of failure to mitigate.

### B. Finance Charges

Second, Glasslam contends that under the "terms and conditions" Budnick cannot recover finance charges relating to materials that were never shipped to Glasslam, and that the Interest Act, § 815 ILCS 205/0.01 *et seq.*, appears to limit the collectible interest on a loan to 5% per annum, rather than the 18% per annum contemplated by the contract.  With regard to Glasslam's quarrel over the finance charges, Budnick claims that Glasslam misconstrues the "terms and conditions" applicable to the sales and that paragraph three of the "terms and condition" makes clear that the finance charges also apply where full payment of the purchase price is not paid when due.  Budnick further contends that § 815 ILCS 205/1's 5% interest rate cap per year does apply to the present circumstances as § 815 ILCS 205/4 expressly permits any rate, amount of interest or compensation for transactions made to corporations or between businesses.

Paragraph three of the terms and conditions provides, in relevant part, as follows:

3. **Payments.** If the full payment of the purchase price is not received

Page 7 of 12

when due as specified on the face hereof or, if not so specified, within 30 days after the shipment date, Budnick Converting, Inc. reserves the right to charge interest on any unpaid balance at a rate of up to 1 ½% per month (or the highest rate permitted by applicable laws; if lower) from the due date.

Based upon the plain language of the terms and conditions, Budnick is entitled to recover finance charges from Glasslam.  Paragraph three clearly provides that finance charges apply in one of two situations: 1) "[i]f the full payment of the purchase price is not received when due as specified on the face hereof or, [2)] if not so specified, within 30 days after the shipment date . . . ."  Here, the evidence shows that the purchase orders for the tape each show a payment term of "net 30" on the face, meaning that payment was due within 30 days.  It is undisputed that Glasslam failed to make payment.  Thus, Budnick is entitled to charge interest on the unpaid balance.

As to Glasslam's argument with regard to the Interest Act, it is a non-starter. Section 815 ILCS 205/1 of the Interest Act provides that "[t]he rate of interest upon the loan or forbearance of any money, goods or thing in action, shall be five dollars ($ 5) upon one hundred dollars ($ 100) for one year, and after that rate for a greater or lesser sum, or for a longer or shorter time, except as herein provided." § 815 ILCS 205/1.  The Illinois Interest Act, however, "'does not apply to transactions involving corporations.'" *Asset Exchange II, LLC v. First Choice Bank*, 953 N.E.2d 446, 451 (Ill. App. Ct. 2011) (citing *Bank of Am. N.A. v. Shelbourne Dev. Group, Inc.*, 732 F. Supp. 2d 809, 821 (N.D. Ill. 2010); *Computer Sales Corp. v. Rouseonelos Farms, Inc.*, 190 Ill. App. 3d 388, 392 (Ill. App. Ct. 1989); *Jones & Brown, Inc. v. W.E.*

*Erickson Constr. Co.*, 73 Ill. App. 3d 481, 483 (Ill. App. Ct. 1979)). Moreover, "if the transaction involves a sale rather than a loan, it is not subject to the limitation on interest." *Computer Sales Corp.*, 190 Ill. App. 3d at 392. "The parties to the contract could agree that defendant would pay interest at a rate higher than the maximum rate provided in the usury statute." *Id.* "Defendant contracted to pay interest at the rate of 1 ½ % per month, and plaintiff was entitled to interest as provided by the contract." *Id.*

### C. Attorneys Fees

Third, Glasslam posits that while the "terms and conditions" contain an attorneys fees provision which may govern the purchase orders at issue, Budnick has failed to establish a sufficient nexus between the "terms and conditions" and these purchase orders as other "terms and conditions" without attorneys fees provisions are in the stream of commerce with Glasslam. Alternatively, it is Glasslam's position, that if even if Budnick establishes an entitlement to attorneys' fees, it has not established how it arrived at its calculation of attorneys' fees. Budnick responds to Glasslam's attorneys fees argument by noting that the Court has already ruled that the "terms and conditions," including the attorneys fees provision applied to these transactions, and that requiring Budnick to submit detailed bills of its attorneys fees is not the law in Illinois.

"Attorneys fees cannot be awarded to successful litigant in courts of law or equity in the absence of an authorizing statute or contract." *Ebert v. Thompson*, 282 Ill. App. 3d 385, 388 (Ill. App. Ct. 1996) (citing *Verni v. Int'l Manor of Oak Park*

*Condo., Inc.*, 99 Ill. App. 3d 1062, 1064 (Ill. App. Ct. 1981)).  An award of attorney fees and costs is within the discretion of the trial court and absent an abuse of discretion, that award will be upheld.  *Taghert v. Wesley*, 343 Ill. App. 3d 1140, 1148 (Ill. App. Ct. 2003).

Here, Glasslam does not contest that the terms and conditions contain an attorney's fees provision; rather, Glasslam speculates about whether the terms and conditions apply or whether some other set of terms and conditions that do not contain an attorneys fees provision apply to the transactions at issue.   This speculation does not create a genuine issue of material fact.  When the Court ruled on the parties' motions for summary judgment, Glasslam did not contest that the terms and conditions containing the attorneys fees provision applied.  Simply referring to a sample order that contained terms and conditions without an attorneys fee provision does not create a genuine issue of material fact with regard to the transactions at issue that did contain those terms and conditions.

Moreover, Glasslam does not suggest that Budnick's attorney's fees are unreasonable in this case, and the  affidavit of Budnick's vice president of sales indicates that Budnick has paid all of the fees owed to their attorneys (Doc. 91-1), making it *prima facie* reasonable.  See *Arthur v. Catour*, 216 Ill. 2d 72, 82 (Ill. 2005) ("The *prima facie* reasonableness of a paid bill can be traced to the enduring principle that the free and voluntary payment of a charge for a service by a consumer is presumptive evidence of the reasonable or fair market value of that service.").  Thus, Budnick is entitled to be awarded its attorney's fees.

*D. Under Performance*

Lastly, Glasslam argues that a genuine issue of material fact exists regarding whether and to what extent Budnick satisfied the essential elements terms of its agreement in that it actually shipped 8 to 12% few linear feet of the tape per spool than the 30,000 linear feet it promised to deliver under the purchase order. As to Glasslam's final argument regarding whether the proper amount of tape was shipped, Budnick again asserts that this issue has already been decided by the Court.  The Court agrees.

In Glasslam's response to Budnick's motion for summary judgment, Glasslam made this same argument and the Court found it baseless for a number of reasons. Glasslam has submitted nothing to the Court to create a genuine issue of material fact on this issue now and, in any event, it appears that under the terms and conditions this argument has been waived by Glasslam.  That relevant provision provides as follows:

> Buyer will promptly inspect all Products delivered to it.  Any claim against Budnick Conversting, Inc. under the Limited Warranty or otherwise for shortages or for damages to or defects in the delivered Products that are observable in a reasonable visual inspection will be deemed waived unless the claim is made in writing to Budnick Converting, Inc. within 30 days after such delivery.

Thus, Glasslam's argument is without merit and is denied.

## IV.  Conclusion

For the reasons stated above and in the Court's previous order dated March 30, 2012 (Doc. 114), summary judgment is entered in favor of Budnick and Tesa and

Page 11 of 12

against Glasslam.  Budnick is awarded damages from Glasslam in the amount of $2,473,353.  The Clerk is to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 5th day of June, 2012.

Digitally signed by
David R. Herndon
Date: 2012.06.05
13:14:06 -05'00'

**Chief Judge**
**United States District Court**